Sammy Ray BENNETT, Appellant,

v.

The STATE of Oklahoma, Appellee.

No. F–79–656.

Court of Criminal Appeals of Oklahoma.

Oct. 13, 1982.

Garvin A. Isaacs, Oklahoma City, for appellant.

Jan Eric Cartwright, Atty. Gen., Robert W. Cole, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

BRETT, Presiding Judge:

Sammy Ray Bennett was convicted of Murder in the First Degree in the District Court of McClain County, Case No. CRF–77–63, and sentenced to punishment of life imprisonment.

On June 28, 1977, Linda Spears, an employee of Nancy's Beauty Shop, near Purcell, Oklahoma, was found dead in that shop of massive blunt force injuries to the head. The appellant had been to the shop at approximately 12:30 p.m. to have Mrs. Spears cut his hair. He was seen at the Sonic Drive-In, in Purcell, at 2:30 p.m., with blood on his face and car.

Nancy Woods arrived at her shop at approximately 5:40 p.m., unlocked the door and noticed blood in the back room, as well as hair around Linda's barber chair. She then found the body of the decedent on the floor under a pile of furniture.

Subsequent to his first trial, the appellant rented an apartment from a Baptist church in Oklahoma City. He was asked to move out because construction was pending and the contractor's insurance stipulated complete vacancy. After the deadline for moving had expired, Carole Eppley, a member of the church staff, entered the appellant's

apartment while searching the building for suitable furniture. She found a table in his apartment and called minister Tom Mitscher to help her remove it. They went into the bathroom to dispose of the refuse on the table and found a billfold with identification belonging to the decedent. The police were informed and a search warrant was procured. Ms. Eppley then entered an apartment previously occupied by the appellant. In a dresser drawer a note with the appellant's fingerprints was found, which read, "I am a nobody, a nothing. I don't deserve to live, I deserve to die. I am dumb for doing what I did way back in June. I would do Anything to undo it, but I can't so I guess I'll have to live with it. I need you help lord." A writing expert concluded that appellant was the author.

First the appellant contends that he was denied his constitutional right to cross-examine State's witness A.J. Chapman. In support of this argument, cases are cited which remind the Court of this privilege but which are unpersuasive of a violation in this case. See *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968); *Pointer v. Texas,* 380 U.S. 400, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965). The portion of the record in which the trial court limited cross-examination is as follows:

BY MR. JORDAN: Dr. Chapman, can you describe the amount of force necessary to injure the skull in the manner that you have described the injury to the skull in this case?

A: Well, you and I have been through that road before.

Q: Yes, we have.

A: I never know quite how to answer that question because I don't know how to describe the amount of force necessary to many times produce injuries that we see .... usually .... I wind up saying it was a helluva blow...

Q: Now, have you ever in your experience, in your professional experience, observed injuries similar to that to the skull?

A: Yes.

Q: On how many occasions?

A: I don't know, a number, several.

Q: All right, do you recall what caused the injuries in any of those instances?

A: Well, I think the first one I ever saw I remember quite well because it. : . .

BY MR. MCCOY: I fail to see the relevancy.

BY THE COURT: What is the purpose of this, Mr. Jordan, as to the number?

MR. JORDAN: He said he had seen several of them.

THE COURT: The detail, then, I don't see the purpose of it.

BY MR. JORDAN: Okay the purpose of it, Your Honor, is to show the amount of force necessary, and we can use comparisons from what he has observed before.

BY THE COURT: Well, I can't see where that's going to help the jury any. Sustained.

MR. JORDAN: Your Honor, did you sustain the objection?

BY THE COURT: Yes, uh huh, I can't see where—the doctor says he can't measure the force, so it depends on I think, each case. We're talking about a particular case here.

█ In view of the fact that Dr. Chapman testified that he could not measure the quantity of force necessary to inflict the type of injury sustained by the deceased it was irrelevant for defense counsel to develop comparisons with previous examinations by Chapman. This Court finds that the trial court did not abuse its discretion in limiting this cross-examination. *Hickerson v. State,* 565 P.2d 684 (Okl.Cr.1977).

█ Appellant's second assignment of error pertains to the admission of certain photographs of the deceased. The introduction of photographs taken subsequent to a homicide is largely in the discretion of the trial court, and unless this discretion is abused it will not be cause for reversal. *Mott v. State,* 94 Okl.Cr. 145, 232 P.2d 166 (1951).

█ Relying on *Oxendine v. State,* 335 P.2d 940 (Okl.Cr.1958), the appellant alleges that the admission of the photographs was prejudicial. However, in *Oxendine,* supra, the cause or manner of death was not an

issue, and in the case at bar, there was substantial controversy over the manner of attack against deceased. Deceased was discovered beneath a pile of furniture. She had suffered multiple lacerations, contusions, and incisions. No weapon was found, and all the evidence against the accused was circumstantial. The photographs corroborated the testimony of Dr. Chapman, who indicated that the death was a result of blows to the head.

In *Batie v. State,* 545 P.2d 797 (Okl.Cr. 1976), photographs of a stabbing victim were allowed for their value in proving the instrument used. In the instant case the State sought to prove that the weapon was a soda pop bottle, and the photographs provided corroboration of that theory. There was no error.

Appellant's third ground for reversal is that his motion to quash the preliminary hearing and dismiss the prosecution should have been sustained because of an illegal arrest.

The statutes provide as follows:

A peace officer may, without a warrant, arrest a person:

* * * When a felony has in fact been committed, and he has reasonable cause for believing the person arrested to have committed it. 22 O.S.1981, § 196.

The method of review on the issue of probable cause was set forth in *Little v. State,* 627 P.2d 445, 448 (Okl.Cr.1981), where this Court stated:

To determine whether there is probable cause, the court must look at the time of arrest and examine the facts and circumstances within the knowledge of the arresting officers at that moment, that is, whether the officers had reasonably trustworthy information sufficient to warrant the belief of a prudent person that the arrestee had committed or was committing a felony. (citations omitted).

■ In the case now before this Court on review, the crime was committed at approximately 2:00 p.m., on June 28, 1977, and county law enforcement officials and OSBI agents worked well into the morning of June 29, processing the scene of the crime. In addition to the receipt bearing the appel-

lant's name, the authorities had interviewed several persons who implicated the appellant by repeating such statements made by him as, "I've already killed my woman for the week." Additionally, the hair clippings and the blood seen on his face and car late that afternoon would lead a reasonable man to believe that the appellant had committed this crime. The motion to quash was properly overruled.

Appellant's fourth assignment of error focuses on the State's attempt to attack the appellant's credibility on the witness stand. As part of its case-in-chief, the State introduced testimony of bloody boot tracks, revealing a Tony Lama brand insignia, and further evidence of appellant's ownership of that type of boot. Appellant testified that he had lost the boots prior to the date of the homicide.

The State then cross-examined the appellant with prior statements made by him at his first trial in which he testified about a friend throwing his boots in the lake during a party at which the appellant was inebriated. The defense's objection, because they didn't have a copy of the transcript from the first trial, was overruled.

■■ It is contended that the trial court erred in allowing the State to introduce evidence of prior bad acts for purposes of impeachment. First, the appropriate specific objection was not made contemporaneously with the alleged error. See 12 O.S. 1981, § 2104(A)1. Although the appellant objected to not having a copy of the previous transcript, he did not object to the use of his prior testimony to impeach the appellant's current statement about his boots. This specific objection is unnecessary, argues the appellant, when there is plain error affecting substantial rights. However, that argument must fail because no error occurred. A prior inconsistent statement is admissible to impeach the credibility of a witness even when such statement would not be admissible as part of the State's case-in-chief. *Sykes v. State,* 572 P.2d 247 (Okl.Cr.1977); 12 O.S.1981, § 2801(4)(a)(1). In the case now before this Court, the statement was not offered to prove that the

appellant was drunk one night and that, therefore, he is a liar, but to permit the jury to evaluate his current testimony in light of his previous testimony regarding the boots. *Dennis v. State,* 561 P.2d 88 (Okl.Cr.1977).

■ Appellant raises as error the cross-examination of him regarding his relationship with his acquaintances in jail, but the only objection at trial went to the form of the final question. The alleged error has not been preserved for review.

■ Finally, the appellant contends that witness Cheek was improperly cross-examined regarding the appellant's behavior at school. However, since she had been examined on direct about the appellant's violence, this was a proper subject on cross-examination. See *Rhoades v. Young,* 479 P.2d 570 (Okl.1971).

In his next assignment of error, the appellant urges that his Sixth Amendment right to confront the witnesses testifying against him was violated when the State was permitted to introduce on rebuttal a transcript of the testimony of Joe Self taken from the first trial. The appellant argues that the due diligence standard was not proven by the State in establishing the reason the State had failed to secure the attendance of witness Self.

The United States Supreme Court established this standard in *Barber v. Page,* 390 U.S. 719, 88 S.Ct. 1318, 20 L.Ed.2d 255 (1968). In that case, the State had made no effort to secure the attendance of a certain witness. Instead, his testimony was introduced from the preliminary hearing, at which time he had not been cross-examined. In discussing the right of confrontation, the Supreme Court noted the following: .

> The right to confrontation is basically a trial right. It includes both the opportunity to cross-examine and the occasion for the jury to weigh the demeanor of the witness. A preliminary hearing is ordinarily a much less searching exploration into the merits of a case than a trial simply because its function is the more limited one of determining whether probable cause exists to hold the accused for

trial. *Barber v. Page,* supra, at 390 U.S. 725, 88 S.Ct. 1322, 20 L.Ed.2d 260.

In addition to this due diligence standard, the State has an obligation to utilize the Uniform Act to Secure the Attendance of Witnesses. 22 O.S.1981, §§ 721–727.

■ At the in-camera hearing on the admission of the transcript of Self's testimony, the trial court found the following: The State made a showing of its attempt to locate Mr. Self prior to trial and issued subpoenas, which were returned unserved; when the State learned that witness Self was in Spokane, Washington, unsuccessful efforts were made to secure his presence; the State was reasonably diligent in its attempt to secure the attendance of this witness.

The trial court's ruling is based upon the testimony at the hearing and this Court will not disturb that decision on appeal. The right to confront witness Self was exercised by the appellant at his first trial and the use of this transcript at the second trial, under the facts of this case, was not an abuse of discretion.

In contending that prejudicial pretrial publicity undermined the ability of the jurors to reach an unbiased decision, the appellant assigns as error the trial court's failure to change venue.

Applicable to this issue is the following rule stated in *Hammons v. State,* 560 P.2d 1024, 1029 (Okl.Cr.1977):

> When considering a motion of a change of venue, the presumption of law is that a defendant can get a fair and impartial trial in the county in which the offense charged was committed. The presumption is rebuttable, but the burden of persuasion is upon the defendant. *Fry v. State,* 91 Okl.Cr. 326, 218 P.2d 643 (1950). A mere showing that pretrial publicity was adverse to the defendant is not enough. *Shapard v. State,* 437 P.2d 565 (Okl.Cr.1967). The defendant must show by clear and convincing evidence that jurors were specifically exposed to the publicity and that he was thereby prejudiced. *Tomlinson v. State,* 554 P.2d 798 (Okl.Cr.

1976). The granting of a change of venue is a discretionary matter within the powers of the trial court and unless it is clear from the record that the trial court has abused its discretion, or committed error in judgment, this Court will not overrule the trial court, especially where there has been an extensive voir dire examination to determine the prejudicial effect of the pretrial publicity. *Shapard v. State,* supra.

Bare allegations are asserted in support of this argument, and there is no basis for the contention that the jurors had been prejudiced by pretrial publicity. See *Thomsen v. State,* 582 P.2d 829 (Okl.Cr. 1978).

It is next contended that this Court should grant relief due to the court reporter's failure to prepare a transcript of the November 22–23, 1977, Hearing on the Motion to Quash the Arrest. The appellant cites numerous attempts to prompt the reporter, whose notes from the proceeding were apparently lost. The thrust of this proposition is that the Motion to Quash the Arrest was improperly denied and that an insufficient record precludes the appellant from raising that error on appeal.

In addition to the fact that the appellant cites no authority directly on point, he makes a bare assertion that the Motion to Quash was improperly denied and fails to provide this Court with the substance of the alleged error. No basis for relief is given.

Reversal is demanded next because the prosecutor injected her opinion of the guilt of the accused during closing argument. However, the record indicates no objections to these remarks, and an examination of the statements reveals that they were not an error of fundamental proportions. This proposition is not properly before this Court. *Shelton v. State,* 583 P.2d 1107 (Okl.Cr.1978).

The appellant contends that he was prejudiced when the court read the instructions after the State's closing argument. This is clearly erroneous; the court read its instructions at the close of the evidence. The court then read *supplemental instruc-*

*tions* to the jury after the State's closing argument, per 22 O.S.1981, § 831.

Subsequent to his first trial and prior to his second, the appellant was residing in an east wing of an apartment building which belonged to the First Baptist Church in Oklahoma City. He then moved into the west wing. Tom Mitscher, a minister in charge of the building, asked the appellant to move out by a certain Wednesday, in order to comply with insurance requirements, as the building was under construction. Appellant agreed to move. The following Thursday, Mitscher and his associate, Carole Eppley, entered the west apartment in search of furniture to be used elsewhere. They found Linda Spears' wallet, some candles, fuses, and a toy cap gun. Mitscher contacted law enforcement officials, who procured a search warrant.

The appellant makes the following argument: (A) Mitscher's search violated the appellant's Fourth Amendment right to privacy; (B) the search warrant was not validly issued because Mitscher and Eppley appeared at the hearing to issue the search warrant and their testimony was not transcribed; and (C) probable cause for the search warrant was not established because the affidavit presented did not state the time the facts supporting the issuance of the warrant occurred.

In his brief, the appellant asserts that Mitscher and Eppley were acting as agents of the government in conducting "a partial criminal investigation." If they indeed were agents, or were acting in collusion with crime enforcement officials, Fourth Amendment protection would be available.

[B]efore the Fourth Amendment can be implicated there must be *governmental action* involved...; [i]nformation derived from a search by a private person who is not acting in collusion with or at the behest of government officials is not subject to Fourth Amendment strictures...; [and] such information can be used in obtaining a search warrant without fatally tainting subsequent governmental action. *United States v. Gibbons,* 607 F.2d 1320, 1324 (10th Cir.1979). (citations omitted)

There was no evidence indicating that Mitscher and Eppley were acting in concert with the government; therefore information obtained from "an inspection which was private in both motivation and manner" is not subject to Fourth Amendment constraints. *United States v. Ford,* 525 F.2d 1308, 1312 (10th Cir.1975).

The appellant argues next that since Mitscher and Eppley appeared before the magistrate to testify upon the issuance of the warrant their statements should as a matter of law be reduced to writing. However, there is no evidence that Mitscher or Eppley ever appeared before the judge. On the contrary, there is evidence that they remained on the church grounds while an officer procured the warrant. Accordingly, this assertion is groundless.

Finally, it is contended that the failure of the affidavit to include the time of the occurrence of the facts recited therein does not establish probable cause for the issuance of a search warrant. However, it is impossible to rule on the sufficiency of the affidavit because it is not included in the record.

The judgment and sentence is Affirmed.

BUSSEY and CORNISH, JJ., concur.