**Jackie Lee WILLINGHAM, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–95–995.**

Court of Criminal Appeals of Oklahoma.

Oct. 15, 1997.

Rehearing Denied Nov. 26, 1997.

---

Steven Hess, Richard Hull, Oklahoma Indigent Defense System, Capital Trial Division, Norman, for Defendant at trial.

Robert Shulte, District Attorney, Lawton, for the State at trial.

William H. Luker, Oklahoma Indigent Defense System, Capital Direct Appeals Division, Norman, for Appellant on appeal.

Susan B. Loving, Attorney General, Robert Whittaker, Assistant Attorney General, Oklahoma City, for Appellee on appeal.

LANE, Judge.

Appellant, Jackie Lee Willingham, was charged with first degree malice murder in violation of 21 O.S.1991, § 701.7, in the district court of Comanche County, Case No. CRF–94–499. The State filed a Bill of Particulars alleging two aggravating circumstances. A jury trial was held before the Honorable Allen McCall, District Judge. The jury found Appellant guilty of first degree murder and found that the murder was especially heinous, atrocious, or cruel.[1] Appellant was sentenced to death. From this Judgment and Sentence Appellant has perfected his appeal.

## I. FACTS

Sufficient evidence was presented to show that Appellant, a traveling salesman, beat and kicked Jayne Van Wey, while she was in the restroom of her office. Appellant left her lying face down on the floor, bleeding and

---

1. 21 O.S.1991, § 701.12(4). The State also alleged that Appellant posed a continuing threat to society. 21 O.S.1991, § 701.12(7).

unconscious. Mrs. Van Wey died as a result of aspirating her own blood.

Investigation by the Lawton police department led to the arrest of Appellant, who, after being interviewed several times admitted to beating Mrs. Van Wey. Appellant claimed that he was upset because Mrs. Van Wey had rudely rebuffed his sales efforts 15 to 30 minutes before the attack. Appellant said that his intent was to beat her, not enough to kill or seriously injure her, "as bad as it was."

Appellant raises sixteen propositions which will be addressed in the order they arose at trial.

## II. JURY SELECTION ISSUES

■ Appellant contends in his twelfth assignment of error that the trial court erred in failing to grant his request for individual voir dire of prospective jurors in order to assess the effect of extensive pretrial publicity. We have considered this issue in previous cases and held that an Appellant may request individual voir dire, but he has no automatic right to such a request, although the request may be granted by the trial court. *See Hain v. State,* 852 P.2d 744, 749 (Okl.Cr.1993), *cert. denied,* 511 U.S. 1020, 114 S.Ct. 1402, 128 L.Ed.2d 75 (1994), *quoting Vowell v. State,* 728 P.2d 854, 857–58 (Okl.Cr.1986) The existence of extensive pretrial publicity through the news media does not itself demand individual voir dire. *Id.* The question is whether Appellant received a fair and impartial jury.

■ Appellant also claims that, because jurors heard answers given by removed panelists, they knew what answers to give in order to remain on the jury. Appellant has not shown that he was denied a fair or impartial jury. There is no indication that Appellant was unable to ask any question of any potential juror. Appellant also has not shown that the jurors were untruthful in their answers. Accordingly, we must conclude that the voir dire proceedings undertaken in this case allowed Appellant a fair and impartial jury.

2. The evidence complained of were two statements, one of which was introduced during the

■ Appellant argues in his fourteenth assignment of error that he was denied a jury composed of a fair cross section of the community because of the operation of 38 O.S. 1991, § 28, which allows those over seventy years of age to opt out of jury service. This Court has previously considered this exact issue on numerous occasions and concluded that no valid basis exists for such a claim. *See e.g. Bryson v. State,* 876 P.2d 240, 251 (Okl.Cr.1994), *cert. denied,* 513 U.S. 1090, 115 S.Ct. 752, 130 L.Ed.2d 651 (1995) (citing prior decisions of this Court denying relief based upon this issue). Appellant has failed to provide any compelling reason for this Court to reconsider its prior decisions or depart from those rulings. Based upon precedent, this proposition of error must fail.

## III. FIRST STAGE GUILT/INNOCENCE ISSUES

Appellant complains in propositions two and three that evidence was introduced in violation of his constitutional rights.[2] All of this evidence was introduced without objection. Thus, Appellant has waived all but plain error. *Johnson v. State,* 611 P.2d 1137, 1145 (Okl.Cr.1980), *cert. denied,* 449 U.S. 1132, 101 S.Ct. 955, 67 L.Ed.2d 120 (1981). We will discuss these propositions along with Appellant's proposition four, that the failure to object to this evidence at trial constituted ineffective assistance of counsel.

To carry his burden an appellant must show counsel's representation fell below an objective standard of reasonableness and must prove the reasonable probability that, but for counsel's errors, the result of the proceedings would have been different. *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984); *Romano v. State,* 917 P.2d 12, 16 (Okl.Cr. 1996). In review of such a claim, we are to accord a strong presumption that counsel was at least constitutionally competent. *Strickland,* 466 U.S. at 689, 104 S.Ct. at 2065.

first stage, and Appellant's bloody boots.

■ The first evidence introduced was statements made by Appellant after his initial appearance, but before he filled out and submitted his application for appointed counsel. The statements concerned credit cards that were found where Appellant had been sitting when first approached by police. Appellant confessed that he had taken the credit cards before the assault and that he took the credit cards to make "it" look like a robbery.

To show that trial counsel was ineffective, Appellant points to a motion to exclude later statements wherein trial counsel states that the initial appearance was held on December 23 rather than December 21. Appellant claims this error in not knowing the correct date caused trial counsel to fail to object to the introduction of the statement. "We are mindful that a waiver by failure to object is predicated on the irregularity being known to the adverse party such that he could have made a timely objection." *Goforth v. State,* 921 P.2d 1291, 1293 (Okl.Cr.1996).

The record indicates that Appellant did not request counsel until after this statement was made. Therefore, this case is distinguishable from *Pickens v. State,* 885 P.2d 678 (Okl.Cr.1994), *overruled on other grounds, Parker v. State,* 917 P.2d 980 (Okl.Cr.1996), and *Michigan v. Jackson,* 475 U.S. 625, 106 S.Ct. 1404, 89 L.Ed.2d 631 (1986). In these two cases there was evidence, either circumstantial or direct, that the defendant had asked for counsel at the initial appearance. In this case, Appellant did not ask for counsel until after this statement had been made. Therefore, given this information, we can neither say that trial counsel's performance fell below objective standards of reasonableness, nor can we say that, absent this evidence, the result would have been different.

Absent this evidence, the State still had evidence that Appellant beat Mrs. Van Wey beyond recognition and left her to die on the restroom floor. The State had Appellant's confession to the assault. The State still had the credit cards and, absent the confession regarding the credit cards, the jury would have been left to speculate about how the victim's credit cards came to be in a place where Appellant was seated. When viewed with the other evidence, that speculation would have ended with the conclusion the Appellant left them there. It would be unreasonable to believe that absent these statements the outcome would have been different.

■ The other evidence introduced was Appellant's blood-covered boots. These boots were seized during Appellant's first interview with Lawton police detective John Whittington, and their discovery led to Appellant's confession. Appellant claims that no probable cause existed to support the seizure of the boots, making this case distinguishable from *Harjo v. State,* 882 P.2d 1067 (Okl.Cr.1994), *cert. denied,* 514 U.S. 1131, 115 S.Ct. 2007, 131 L.Ed.2d 1007 (1995). We find that the facts known to the police supported a finding of probable cause.

Whittington knew that Appellant fit the description of the sole suspect. He knew that it was more probable than not that Appellant was in the area of the murder but had lied about his whereabouts. He knew that there was a high probability that whoever committed the crime would have blood on his shoes, due to the amount of blood at the scene. In fact, when Whittington inspected the outside of the boots, he observed what he believed to be blood. The questioning of Appellant about the blood led to the confession.

This case is indistinguishable from *Harjo* where the seizure of shoes was upheld because the officers had probable cause and exigent circumstances existed for the seizure. *Id.* at 1073–74. Therefore, under this analysis, we cannot say that the trial attorney's failure to object to the admission of the boots fell below objective standards of reasonableness.

## IV. FIRST STAGE INSTRUCTIONS

■ Appellant requested instructions on the lesser offenses of second degree depraved mind murder and first degree heat of passion manslaughter. The trial court refused to instruct on second degree depraved mind murder, but did instruct on first degree heat of passion manslaughter. Appellant claims, in his first proposition, that the refus-

al to instruct the jury on the offense of second degree depraved mind murder as a "lesser included" offense was error.[3]

The instructions were requested based on Appellant's defense that he lacked the requisite intent to kill for a first degree murder conviction. This was Appellant's only theory of defense at trial.

██ Appellant misconstrues second degree "depraved mind" murder as a "lesser included" offense of first degree "malice" murder.

A lesser included offense is a part of the greater offense and the establishment of the essential elements of the greater offense necessarily establishes all the elements required to prove the lesser included offense. Stated another way, an offense is a lesser included one only where the greater offense cannot be committed without necessarily committing the lesser.

*State v. Uriarite*, 815 P.2d 193, 195 (Okl.Cr. 1991); *see also Jennings v. State*, 643 P.2d 643, 645 (Okl.Cr.1982) (the elements of a lesser included offense must necessarily be included in the offense charged).

An examination of the elements of both second degree "depraved mind" murder and first degree "malice" murder reveals that the elements of second degree "depraved mind" murder are not necessarily included in the charge of first degree "malice" murder. Because there is some confusion regarding the elements of second degree murder, we must first examine our second degree murder stat-

3. Appellant requested instructions based on OUJI–CR 449, 450 and 450 (1981). The requested instructions were not based on our holding in *Palmer v. State*, 871 P.2d 429 (Okl.Cr.1994).

4. This crime was committed after our decision in *Palmer*.

5. The State also cites *Valdez v. State*, 900 P.2d 363 (Okl.Cr.), *cert. denied*, —— U.S. ——, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995) for the proposition that, because Appellant's conduct was "intentionally, purposefully and indisputably directed toward" Mrs. Van Wey, he was not entitled to an instruction on second degree depraved mind murder.

ute and determine the proper elements of depraved mind murder.

A homicide is second degree depraved mind murder:

> When perpetrated by an act imminently dangerous to another person and evincing a depraved mind, regardless of human life, although without any premeditated design to effect the death of any particular individual . . .

21 O.S.1991, § 701.8

The elements have been construed to be:

1) death of a human;

2) caused by conduct which was imminently dangerous to another person;

3) the conduct was that of the defendant;

4) the conduct evinced a depraved mind in extreme disregard of human life;

5) the conduct is not done with the intention of taking the life of *or harming* any particular individual.

*Palmer v. State*, 871 P.2d 429, 432 (Okl.Cr. 1994) (emphasis added).[4] The State relies on element five to argue that because the conduct was directed toward Mrs. Van Wey, "a particular individual," second degree depraved mind murder instructions were not warranted.[5]

██ We take this opportunity to revisit the elements of second degree depraved mind murder which were spelled out in *Palmer* and have been adopted in the Second Edition of the Uniform Criminal Jury Instructions [OUJI–CR 2d 4–91]. We find that the fifth element should be modified to read "the conduct is not done with the intention of taking the life of any particular individual." [6]

6. Apparently the fifth element adopted in *Palmer* was derived from 21 O.S.1991, § 705, "Homicide perpetrated by an act imminently dangerous to others and evincing a depraved mind regardless of human life, is not the less murder because there was no actual intent to injure others." Or the element was taken from OUJI CR–450, "A person may be convicted of murder in the second degree if he/she engages in conduct imminently dangerous to another person that shows a depraved mind in extreme disregard of human life, although the conduct is not done with the intention of taking the life of or harming any particular individual." In either case, the meaning is that a defendant does not have to have an intent to kill or harm another. This does not mean that

Our case law decided prior to *Palmer* supports the notion that second degree depraved mind murder may be committed where the victim is specifically targeted. *See Quilliams v. State*, 779 P.2d 990, 991 (Okl.Cr. 1989) (defendant admitted to intentionally shooting the victim although he denied an intent to do more than wound the victim); *Dorsey v. State*, 739 P.2d 528, 529(Okl.Cr.1987) (defendant intentionally armed himself with a knife and entered the store where he started a fight with the victim and intentionally stabbed him). Therefore, we hold that our holding in *Palmer* should be overruled in so far as it relates to the fifth element of depraved mind murder.

The elements of second degree depraved mind murder as found at OUJI CR 2d 4–91 should be modified to read as follows:

1) death of a human;
2) caused by conduct which was imminently dangerous to another person;
3) the conduct was that of the defendant;
4) the conduct evinced a depraved mind in extreme disregard of human life;
5) the conduct is not done with the intention of taking the life of any particular individual.

In modifying these instructions, we note that the existence of an intent to harm a particular individual should not preclude a conviction under section 701.8, because an intent to harm or injure can prove that the conduct was imminently dangerous to another person or that the accused was acting with a depraved mind. Specifically, in *Smith v. State*, 932 P.2d 521, 539–40 (Okl.Cr.1997) (order granting rehearing), we held that second degree murder can be applied to situations where a person's wrath is directed at a particular individual. This holding revives earlier case law and clarifies *Palmer* by restating that it is not necessary for the State to show that an accused acted with no intent to harm another, as *Palmer* seemed to say. However, because an intent to injure or harm another is not an element of depraved mind

murder, it is not necessary for the State to prove an intent to harm. *See* 21 O.S.1991, § 705 ("Homicide perpetrated by an act imminently dangerous to others and evincing a depraved mind regardless of human life, is not the less murder because there was no actual intent to injure others.")

To determine whether second degree "depraved mind" murder is a lesser offense included in the offense of first degree malice murder, we must compare the elements of the two. The elements of first degree malice murder are:

1) unlawful
2) death of a human
3) caused by another
4) with malice aforethought.

21 O.S.Supp.1995, § 701.7(A).

As can be seen, second degree "depraved mind" murder contains elements not found within the elements of first degree "malice" murder. Malice murder requires an intent to kill, regardless of the means used. Second degree murder requires that the defendant act with imminently dangerous conduct. There are circumstances that first degree malice murder can occur without the use of imminently dangerous conduct. Therefore, second degree depraved mind murder is not necessarily included in a charge of first degree malice murder.

Under the earlier versions of our second degree murder statute, cited above, second degree murder was a lesser included offense of first degree murder. *See* 21 O.S.Supp. 1973, § 701.2 (Homicide is murder in the second degree when perpetrated with premeditation, but by an act not enumerated in the first degree murder section). However, when our murder statutes were amended in 1976, second degree "depraved mind" murder was no longer a lesser included offense of first degree "malice" murder. Apparently, our case law failed to recognize this change in the statutes. We now hold that second degree depraved mind murder is not a lesser

there must be an absence of an intent to injure any particular person.

The Committee preparing the Second Edition of the Uniform Criminal Jury Instructions came to the correct conclusion when they said that a

person who *kills* another through *imminently dangerous conduct directed at a particular person, with an intent to injure,* could be convicted of depraved mind murder. OUJI–CR 2d 4–91, *Committee Comments.*

included offense of first degree malice murder. Therefore, the trial court did not commit reversible error in refusing to give the instruction.

■ Appellant next argues that because there was insufficient evidence that he committed first degree heat of passion manslaughter the giving of this instruction as the only lesser included offense amounted to no instruction at all. Therefore, the jury was left with only two viable options: guilty of first degree capital murder or acquittal. According to Appellant, the lack of an instruction on second degree depraved mind murder combined with the erroneous instructions on first degree heat of passion manslaughter violated the holding in *Beck v. Alabama*, 447 U.S. 625, 633–45, 100 S.Ct. 2382, 2387–93, 65 L.Ed.2d 392 (1980). Appellant also argues that because the trial court instructed on heat of passion manslaughter, the court must have believed that there was evidence sufficient for a reasonable jury to find that Appellant did not have the intent to kill.

*Beck v. Alabama* can be distinguished from this case and from Oklahoma's capital sentencing procedure. First, *Beck* only requires instructions on "lesser included" non-capital offenses. Our examination of second degree "depraved mind" murder shows that it is not a "lesser included" offense of first degree "malice" murder. Second, the procedure attacked in *Beck* would lead jurors to believe that a sentence of death would automatically follow a finding of guilt and makes the guilt determination depend on the jury's feelings at to whether or not the defendant deserves the death penalty. *Id.* 447 U.S. at 639–40, 100 S.Ct. at 2390–91. Our procedure allows a jury to know, during voir dire, that there are three sentencing options for first degree murder: life, life without parole, and death; therefore, the guilt determination is not dependent on the jury's feeling on whether the defendant deserves death. Third, *Beck* only requires an instruction on lesser included offenses when the evidence supports such an instruction. *Hopper v. Evans,* 456 U.S. 605, 611, 102 S.Ct. 2049, 2053, 72 L.Ed.2d 367 (1982).

We find that the trial court in this case was overly generous in giving the first de-

gree manslaughter instructions. Appellant obviously wanted the jury to believe that he was still in the "heat of passion" brought about by the earlier confrontation between himself and Mrs. Van Wey. Although the evidence does not conform to the law of first degree heat of passion manslaughter, any error in giving this instruction went to the benefit of Appellant.

Appellant also claims that, because the trial court gave the elements of first degree manslaughter that require the jury to find that a dangerous weapon was used, without evidence that a dangerous weapon was used, the jury was precluded from finding Appellant guilty of this offense. Had the correct instruction been given, no different result would have been reached. The facts of this case simply do not support any instruction on first degree manslaughter. In addition, the jury was instructed to consider the manslaughter instructions only if they found Appellant not guilty of first degree murder. In following the instructions, manslaughter was not considered by the jury. Therefore, no error resulted by giving apparently flawed first degree manslaughter instructions.

■ Appellant argues in proposition seven that he was denied the fundamental right to have the jury find him not guilty if the State failed to prove his guilt beyond a reasonable doubt, because first stage instruction number nine stated that the jury "should," rather than "must," return a verdict of not guilty, if the jury had reasonable doubts as to Appellant's guilt. Appellant is proposing that the use of the term "should" is permissive rather than mandatory. Yet, Appellant cites no cases where the term "should" was defined as permissive.

The instruction at issue stated in part, "if you entertain a reasonable doubt as to his guilt, then in either such event you should return a verdict of not guilty." The term "should," when used such as it was used by the trial court, is defined as expressing an obligation or duty. "Should" is never placed on the level with "may" which is clearly permissive. *State ex rel. Cartwright v. Oklahoma Natural Gas Co.,* 640 P.2d 1341, 1345 (Okla.1982).

We find that the jury instructions, when read as a whole, state the relevant law as it applied to the jury's duty to determine if the State has proven its case beyond a reasonable doubt. There is no error here.

## V. ISSUES PERTAINING TO BOTH FIRST AND SECOND STAGE.

■ Appellant complains in his ninth proposition of error that his constitutional rights to due process, a fair trial and a fair and reliable sentencing hearing were violated by the admission and display of highly prejudicial and inflammatory photographs. We note that, of the photographs presented at trial, the defense only objected to State's Exhibits 36, 37, 38, 49, 50 and 51. These photographs depict the injuries sustained to the victim's face. The first three were taken at the morgue in Lawton and the remaining three were taken at the medical examiner's office after the blood had been washed from the victim's face. Appellant argues that the introduction of all six of these photographs was unnecessary because Appellant had admitted to beating and kicking the victim in the face and because the cause of death was not in dispute. He argues that the prejudicial impact of these photographs upon the jury outweighed their probative value.

■ The test for admissibility of photographs is not whether they are gruesome or inflammatory, but whether their probative value is substantially outweighed by the danger of unfair prejudice. *Hooks v. State*, 862 P.2d 1273, 1280 (Okl.Cr.1983), *cert. denied*, 511 U.S. 1100, 114 S.Ct. 1870, 128 L.Ed.2d 490 (1994); *see also* 12 O.S.1991, § 2403. Whether to introduce photographs of a homicide victim is a decision largely within the trial court's discretion. *Bennett v. State*, 652 P.2d 1237, 1239 (Okl.Cr.1982). A trial court's decision to allow the introduction of photographs will not be disturbed absent an abuse of discretion.

Photographs depicting murder victims can be probative in many respects. They can show the nature, extent and location of wounds, depict the crime scene and corroborate a medical examiner's testimony. *Nguyen v. State*, 769 P.2d 167, 171 (Okl.Cr.1988), *cert. denied*, 492 U.S. 925, 109 S.Ct. 3264, 106

L.Ed.2d 609 (1989), *overruled on other grounds Green v. State*, 862 P.2d 1271 (Okl. Cr.1993). In addition to the aforementioned examples, the photographs, which showed the wide ranging locations of the victim's wounds, were relevant to the jury's determination of malice aforethought.

Appellant argues that if the photographs were admitted to assist the medical examiner in her testimony, then only one or two photographs would have been sufficient. Because we hold that the photographs were probative of other issues, this argument is without merit.

Appellant argues that the photographs were cumulative. "Relevant evidence may be excluded if its probative value is substantially outweighed by ... the needless presentation of cumulative evidence...." 12 O.S. 1991, § 2403. The photographs in this case show different angles of the victim's face. Only two of the photographs are of the same angle. One was taken prior to the victim being cleansed of blood and the other was taken after the victims face was cleaned. We cannot say that these photographs needlessly presented cumulative evidence.

■ Appellant also argues that the introduction of the photographs during the second stage of trial resulted in a sentencing procedure that did not meet constitutional requirements. Photographs admitted during second stage were relevant to show the extent of the injuries and allow the jury to decide whether the injuries caused physical suffering or amounted to torture. There was no error in admitting the photographs of the victim in this case in either the first or second stage of trial.

■ In proposition ten Appellant argues that a video taped confession made at the crime scene was an improper reenactment which was cumulative, more prejudicial than probative and violated his constitutional rights. What Appellant describes as a reenactment can be more properly described as a walk through of the crime scene with Appellant telling his version of the events. Appellant is showing where certain events occurred at the crime scene. This video is

clearly distinguishable from *Ford v. State,* 719 P.2d 457, 460 (Okl.Cr.1986) and *Valdez v. State,* 900 P.2d 363, 386 (Okl.Cr.), *cert. denied,* —— U.S. ——, 116 S.Ct. 425, 133 L.Ed.2d 341 (1995), where in both cases the prosecutor forced the defendant to demonstrate how he used a certain weapon in front of the jury. There is no error here.

■ Appellant argues in proposition eight that he was denied a fair trial and reliable sentencing proceeding by the improper actions of the prosecutor. Appellant argues first that the prosecutor made improper remarks during both his first stage and second stage closing arguments.

The prosecutor theorized that Appellant had killed Mrs. Van Wey to keep her from identifying him as the person who stole her credit cards. The prosecutor also made remarks wondering how the victim's panties and shoes got behind the bathroom door, but yet she had her slacks with her. Despite Appellant's claim, there was no speculation about any sex crime other than questions of the medical examiner about the cause of injuries to Mrs. Van Wey's vaginal area. The prosecutor also theorized that Mrs. Van Wey crawled around on the bathroom floor; however, there was no direct evidence that she crawled on the floor.

■ This Court has long held that both counsel are entitled to make reasonable arguments relative to the evidence offered and draw reasonable inferences therefrom. *Fitchen v. State,* 738 P.2d 177, 179 (Okl.Cr. 1987). Counsel for both the defendant and the State must be accorded a liberal freedom to argue the evidence and its logical inferences during closing arguments. *Jones v. State,* 738 P.2d 525, 530 (Okl.Cr.1987). Prosecutors are entitled to fully discuss the evidence from their standpoint, drawing all logical inferences and deductions arising from that evidence. *Holt v. State,* 628 P.2d 1170, 1171 (Okl.Cr.1981). We find no error in these statements.

Appellant next argues that the prosecutor committed misconduct in his manner of presenting the victim impact evidence complained of below. We find that while the victim impact evidence was questionable, its admission did not rise to the level of prosecutorial misconduct.

■ Appellant argues that the prosecutor elicited sympathy for the victim in this case during the second stage argument. In order for the remarks of the prosecuting attorney to constitute reversible error they must be flagrant and of such a nature as to be prejudicial to the defendant. *Collins v. State,* 758 P.2d 340, 341 (Okl.Cr.1988). We do not find that the prosecutors comments were of the type that would constitute prejudicial error.

## VI. SECOND STAGE ISSUES

Appellant contends in proposition two that evidence presented in the second stage was obtained in violation of Appellant's sixth amendment right to counsel. This evidence was introduced without objection. Thus, the same analysis that was applied for the first stage evidence admitted without objection is applicable here.

The statement complained of was made the same day as the initial arraignment. Appellant has not shown that this statement was made either after the initial appearance or after he had invoked his right to counsel. Absent any evidence to the contrary, we cannot say that this evidence was introduced in violation of Appellant's constitutional rights.

■ Appellant contends in proposition eleven that the State presented insufficient evidence to prove the existence of the especially heinous, atrocious or cruel aggravating circumstance. Appellant argues that there was no evidence that the victim in this case underwent prolonged conscious physical suffering or that the victim suffered any mental anguish separable from that inherent in the underlying homicide. The heinous, atrocious or cruel aggravating circumstance is restricted to those murders in which torture or serious physical abuse is present. *Stouffer v. State,* 742 P.2d 562, 563 (Okl.Cr.1987), *cert. denied,* 484 U.S. 1036, 108 S.Ct. 763, 98 L.Ed.2d 779 (1988). To support a finding of this aggravating circumstance the State must prove conscious serious physical abuse or torture prior to death. *Nuckols v. State,* 805

P.2d 672, 674 (Okl.Cr.), *cert. denied,* 500 U.S. 960, 111 S.Ct. 2276, 114 L.Ed.2d 727 (1991).

When a jury finds that an aggravating circumstance exists, we must view the evidence supporting the aggravating circumstance in the light most favorable to the State. *Romano v. State,* 847 P.2d 368, 387 (Okl.Cr.1993), *aff'd,* 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994). Appellant's own testimony reveals that he punched Mrs. Van Wey in the face at least three times, then he slammed her head into the wall causing her to fall to the ground on her back. Mrs. Van Wey was still conscious at that point because she was able to roll over and rise to her hands and knees before being kicked in the face by Appellant. Circumstantially, it was at that point that she lost consciousness and aspirated her own blood which caused her death. Certainly this evidence supports a finding that Mrs. Van Wey was subjected to serious physical abuse allowing us to proceed to a determination as to whether the murder was especially heinous, atrocious or cruel.

Along with Appellant's testimony, the medical examiner testified that there were at least four violent blows to the victim's head. This evidence combined with Appellant's testimony can lead one to conclude that some of these blows occurred prior to the loss of consciousness. Circumstantial evidence and common sense would lead a reasonable jury to believe that this killing was successfully designed to inflict a high degree of pain on the victim. Therefore, there was sufficient evidence to show that the murder was especially heinous, atrocious or cruel.

Appellant argues in proposition five that he was prejudiced by improper victim impact evidence which included recommendations for a death sentence, and which were highly prejudicial and resulted in a verdict constituting cruel and unusual punishment. Appellant cites four statements: The first by the victims husband, James Van Wey who stated that a "cur" or "stray dog" should not die the way his wife had; Mrs. Van Wey's youngest daughter, Jamie Van Wey, who said that, because of the way her mother died, "that's what she would have done to Jackie Lee Willingham. He doesn't deserve life. He should die for his punishment."

Kim Borcherding, Mrs. Van Wey's oldest daughter also stated that Appellant should have the death penalty for his actions. Kay Van Wey, Mrs. Van Wey's middle daughter, made the most emotional plea. She referred to Appellant as a "piece of trash" and stated,

I think the only fair punishment for him is he should be confined in a small area, someone three or four times his size should come into that confined area and beat him, cause him pain. I think he should have to beg for his life. I think he should have to choke on his own blood. I think he should have to crawl, try to get away from his attacker.

I think he should suffer, suffer, suffer, but you know, even if he's put to death, he won't suffer, you know he will have a painless death. We can't do anything to him that will cause him the kind of pain that has been caused to our mother and to us . . .

Mom has raised us to be kind and forgiving, but we can't forgive this and we want him killed.

No contemporaneous objection was made to these statements, however, trial counsel did object to the method of presenting victim impact evidence at the beginning of this phase of trial.

Oklahoma's desire to allow victims of violent crimes some type of influence in the sentencing of criminal defendants has led to different statutes. 22 O.S.Supp.1992, §§ 984 and 984.1 allow the use of "victim impact statements" and 21 O.S.Supp.1992, § 701.10(C) allows the use of "victim impact evidence."

21 O.S.Supp.1992, § 701.10(C) pertains only to capital sentencing proceedings. The State may present "victim impact evidence" about the victim and the impact of the murder on the family of the victim. The clear language of section 701.10(C) limits the type of victim impact evidence allowable in a capital sentencing procedure. This section is not as encompassing as 22 O.S.Supp.1992, §§ 984 and 984.1. Section 984 reads in part:

"Victim impact statements" means information about the financial, emotional, psy-

chological, and physical effects of a violent crime on each victim and members of their immediate family, or person designated by the victim or by family members of the victim and includes information about the victim, circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence . . .

Section 984.1 states that,

Each victim, or members of the immediate family of each victim or person designated by the victim or by family members of the victim, may present a written victim impact statement or appear personally at the sentencing proceeding and present the statements orally. Provided, however, if a victim or any member of the immediate family or person designated by the victim or by family members of a victim wishes to appear personally, such person shall have the absolute right to do so.

22 O.S.Supp.1992, § 984.1(A).

This Court has stated that both "victim impact statements" and "victim impact evidence" are admissible in a capital sentencing procedure.[7] This includes a victim's rendition of the "circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence." *See* 22 O.S.Supp. 1992, § 984, *Hain;* 919 P.2d at 1144. However, "evidence may be introduced 'that is so unduly prejudicial that it renders the trial fundamentally unfair,' thus implicating the Due Process Clause of the Fourteenth Amendment." *Cargle v. State*, 909 P.2d 806, 826 (Okl.Cr.1995), *cert. denied,* —— U.S. ——, 117 S.Ct. 100, 136 L.Ed.2d 54 (1996), *quoting Payne v. Tennessee*, 501 U.S. 808, 825, 111 S.Ct. 2597, 2608, 115 L.Ed.2d 720 (1991).

The comments by the victim's family in this case can be construed to be comments on the manner in which the crime was perpetrated, including the comments which equate the recommendation on punishment with the type of death the victim suffered. However, this Court has found that comments such as these have no place in a "victim impact statement." *See Conover v. State*, 933 P.2d 904, 920–21 (Okl.Cr.1997). This Court has also held that a victim's recommendation of punishment is allowable in a capital jury sentencing proceeding but will be viewed by this Court with a heightened degree of scrutiny. *Ledbetter v. State*, 933 P.2d 880, 891 (Okl.Cr. 1997).

We note that the trial attorney failed to make objections to these statements when they were introduced during the sentencing phase of the trial. Therefore, the error must rise to the level of plain error. Regardless, we will review these statements under our statutorily mandated sentence review to determine whether the statements caused Appellant to be sentenced to death for improper reasons.

Appellant also argues in proposition five that victim impact evidence is an unconstitutionally vague and over broad super-aggravator. We have addressed similar arguments before. In *Cargle*, 909 P.2d at 826 we held that victim impact evidence is very different and serves a different purpose than aggravation evidence. The State is still required to prove at least one aggravator beyond a reasonable doubt before the death penalty may be imposed. *Id.*

The jury was specifically instructed that they could only consider the aggravating circumstances set forth in the instructions. Appellant has presented no evidence, nor do we find, that the jury would not have found the

---

**7.** While I recognize that a majority of this Court has held that both "victim impact evidence" under 21 O.S.Supp.1992, § 701.10(C) and "victim impact statements" under 22 O.S.Supp.1992, §§ 984 and 984.1 are admissible before a jury in a capital sentencing procedure, I continue to be of the opinion that only "victim impact evidence," defined in section 701.10(C) as evidence about the victim and the impact of the murder on the family of the victim, is admissible before a jury in a capital sentencing proceeding.

It is my opinion that "victim impact statements," which include 701.10(C) information as well as circumstances surrounding the crime, the manner in which the crime was perpetrated, and the victim's opinion of a recommended sentence, should only be presented to the trial judge at the formal sentencing proceeding. I also believe that the language of the legislature supports my position on this issue.

aggravating circumstance but for the victim impact evidence.

Appellant argues that because the jurors received no instructions on the legal effect they were to give the victim impact evidence, he was denied a reliable sentencing hearing. Because Appellant's trial was held prior to the time the opinion in *Cargle* was handed down, the trial court did not have the benefit of the instructions contained therein. Appellant also did not offer any instructions on the victim impact evidence for the trial court's consideration.

Appellant has failed to show how he was prejudiced by the lack of a victim impact evidence instruction. He has not shown that the jury would have come to a different conclusion had an instruction been issued. Therefore, the arguments in proposition five are denied.

■ In proposition six Appellant complains that he was not properly notified about the victim impact evidence to be presented by the State either through discovery or through a notification procedure. In *Cargle*, we held that the State should file a Notice of Intent to Produce Victim Impact Evidence, detailing the evidence sought to be introduced, and an in-camera hearing should be held by the trial court to determine the admissibility of the evidence as it relates to 12 O.S.1991, § 2403. Further, the evidence sought to be introduced should be limited to the evidence listed in the prosecutor's notice filed before trial. *Cargle* at 828. However, *Cargle* was not the law at the time of Appellant's trial. Therefore, we must determine if Appellant was prejudiced by the limited discovery given by the State.

The State did inform Appellant that the victim's daughters and her husband would,

> testify about the victims' life, the kind of person she was, what she meant to them, how she affected their lives by and through her own actions and activity, what the loss has meant and how it has affected them and how it has changed things in their life.[8]

Appellant objected to the introduction of victim impact evidence from anyone other than Kay Van Wey who had prepared a type written victim impact statement. The trial court held that the discovery summary was sufficient to place Appellant on notice. We cannot say that the trial courts ruling was an abuse of discretion.

Appellant argues in proposition thirteen that the especially heinous atrocious or cruel aggravating circumstance, as applied in this case, does not perform the narrowing process required by the constitution because the aggravator is vague and can be applied in any murder case. This Court has previously rejected this argument. *Williamson v. State*, 812 P.2d 384, 407 (Okl.Cr.1991), *modified*, 905 P.2d 1135, *cert. denied*, 503 U.S. 973, 112 S.Ct. 1592, 118 L.Ed.2d 308 (1992). We do not choose to hold differently now.

## VII. SECOND STAGE JURY INSTRUCTION ISSUES

■ In Proposition fifteen, Appellant raises issues previously rejected by this Court in order to preserve such for future appellate review. In his first assignment of error, Appellant contends the trial court's failure to give his requested jury instruction stating that the jury's findings regarding mitigating circumstances did not have to be unanimous violated his rights to a fair sentencing proceeding. This Court has repeatedly rejected this argument and we do so again. *Knighton v. State*, 912 P.2d 878, 896 (Okl.Cr.1996), *cert. denied*, —— U.S. ——, 117 S.Ct. 120, 136 L.Ed.2d 71 (1996) (and cases cited therein).

Appellant argues that the instructions given to the jury on the issue of mitigation permitted the jurors to ignore mitigating evidence altogether, and seriously diminished the effect of the mitigating evidence presented in this case. Appellant acknowledges that this Court upheld the same or similar instructions to those given in this case in *Pickens*, 850 P.2d at 339. We decline to reconsider our prior decisions on this issue.

---

8. Appellant was also provided a type written victim impact statement from Kay Van Wey; however, this document was not made a part of the record on appeal.

█ Appellant next argues that the trial court committed error when it failed to instruct the jury that they could consider a sentence of life and life without parole even though they may find the existence of an aggravating circumstance. Such an instruction is not required and this Court has been consistent in our rejection of this argument. *Valdez v. State,* 900 P.2d at 385. We find no error in the omission of this instruction.

In his final proposition of error, Appellant argues that if none of the errors are sufficient for reversal on their own, then the combined effect of the errors deprived him of a fair trial and the cumulative error requires reversal. As we have found no single error requiring reversal, we cannot find that the proceedings, as a whole, were unfair. We have consistently held that where there is no individual error there can be no reversal for cumulative error. *Fields v. State,* 923 P.2d 624, 638 (Okl.Cr.1996), *cert. denied,* — U.S. ——, 117 S.Ct. 1704, 137 L.Ed.2d 829 (1997) (and cases cited therein).

### MANDATORY SENTENCE REVIEW

█ Pursuant to 21 O.S.1991, § 701.13(C), we must determine whether the sentence of death was imposed under the influence of passion, prejudice or any other arbitrary factor and whether the evidence supports the jury's finding of the aggravating circumstance. We have previously discussed the second portion of this mandate. The jury found the existence of one aggravating circumstance—the murder was especially heinous, atrocious or cruel. 21 O.S.1991, § 701.12(4). We have found that this aggravating circumstance was supported by sufficient evidence.

Appellant complains that the victim impact evidence caused the jury to impose a sentence of death out of sympathy for the victim. The victim impact evidence, although not as extensive as that in *Conover,* was improper. Victim's should not be allowed to characterize the punishment a defendant deserves in terms of their perception of the criminal act. This type of characterization may lead a jury to conclude that murder defendant's deserve death, regardless of the circumstances.

Furthermore, this type of victim characterization allows the State to present their theory of the case through the opinions of lay witnesses. Speculation about the way a murder was committed should be left to those experts who have been trained in the sciences and arts of crime scene reconstruction and evidence interpretation. While lawyers are allowed to make arguments based on the evidence in closing argument, victim's should not be able to make the same type of argument to be considered as substantive evidence.

To allow victims to speculate that a defendant will not suffer enough if given the death penalty is beyond the scope of any allowable testimony, lay or expert. While victim opinions about the type of punishment a defendant deserves has been upheld as a balance to a defendant's pleas for mercy, the type of testimony presented in this case is the kind that can tip the balance too far.

█ We must determine if this improper victim impact evidence caused the jury to disregard other evidence and mis-weigh the aggravating circumstance against the mitigating evidence. Mitigating evidence was presented by Appellant through the testimony of five witnesses. The witnesses were his mother and friends. Appellant's friends had known him for about three years. They testified about his conduct and demeanor toward non-violence, his caring and kind attitude and his lack of prior violence. His mother testified about his childhood. Her testimony revealed that Appellant was raised by his abusive mother in a family filled with alcohol and drug abuse and without a stable father figure.

The mitigating evidence was summarized into an instruction for the jury to consider, along with the fact that he cooperated with the police, he had shown remorse, and he confessed. The jury was instructed that they could determine mitigating circumstances based on the facts of the case. After reviewing the record and carefully weighing the aggravating circumstances and the mitigating evidence, we find the sentence of death to be factually substantiated and appropriate. We find that even absent the

improper victim impact evidence, the result would have been the same.

Finding no error warranting reversal or modification, Judgment and Sentence of the District Court of Comanche County is **AFFIRMED.**

STRUBHAR, V.P.J., and JOHNSON, J., concur.

LUMPKIN, J., specially concurs.

CHAPEL, P.J., concurs in results.

LUMPKIN, Judge, specially concurring:

I concur in the Court's decision in this case and agree the fifth element contained in OUJI–CR (2nd) 4–91 should be modified. This modification reconciles a conflict which has existed between the elements set out in the Instruction and the committee comments to the Instruction. The Oklahoma Court of Criminal Appeals Committee for Uniform Jury Instructions has set out an excellent analysis of the historical evolution of what is now Section 701.8 of Title 21, defining murder in the second degree. The Court now adopts that analysis. In addition, this holding by the Court provides a bright line for trial practitioners and judges in determining the lesser included offenses applicable to a charge of first degree murder. That determination not only helps ensure error is not created in the trial court but provides an objective basis for this Court to analyze issues presented on appeal.

I also agree with the Court's determination Appellant's Proposition IV relating to ineffective assistance of counsel is without merit. However I do so based on the further legal evolution established by the United States Supreme Court concerning the *Strickland* standard. *See Strickland v. Washington,* 466 U.S. 668, 686, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674 (1984). *Strickland* sets forth a two-part test which must be applied to determine whether a defendant has been denied effective assistance of counsel. First, the defendant must show that counsel's performance was deficient, and second, he must show that deficient performance prejudiced the defense. Unless the defendant makes both showings, "it cannot be said that the

conviction ... resulted from a breakdown in the adversary process that renders the result unreliable." *Id.* at 687, 104 S.Ct. at 2064. This means appellant must demonstrate the counsel's representation was unreasonable under prevailing professional norms and that the challenged action cannot be considered sound trial strategy. *Id.* at 688–89, 104 S.Ct. at 2064–66. When a claim of ineffectiveness of counsel can be disposed of on grounds of lack of prejudice, that course should be followed. *Id.* at 696, 104 S.Ct. at 2070, 80 L.Ed.2d at 699. Concerning the prejudice problem, the Supreme Court, in interpreting *Strickland,* has held:

[an appellant] alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland,* 466 U.S., at 687, 104 S.Ct., at 2064; *see also Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 2582, 91 L.Ed.2d 305 (1986) ("The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect"); *Nix v. Whiteside,* 475 U.S. [157], at 175, 106 S.Ct. [988], at 998[, 89 L.Ed.2d 123 (1986)]. Thus, an analysis focusing solely on mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective. To set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him. *See [United States v.] Cronic,* 466 U.S. [648], at 658, 104 S.Ct. [2039], at 2046 [80 L.Ed.2d 657 (1984)].

*Lockhart v. Fretwell,* 506 U.S. 364, 369–70, 113 S.Ct. 838, 842–43, 122 L.Ed.2d 180, 189 (1993) (footnote omitted). Although we must consider the totality of the evidence which was before the factfinder, our "ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged." *Strickland,* at 695, 104 S.Ct. at 2069; *Fisher v. State,* 736 P.2d 1003, 1012 (Okl.Cr.1987), *cert. denied* 486 U.S. 1061, 108 S.Ct. 2833, 100 L.Ed.2d 933 (1988). In reviewing the evidence contained in this record,

together with a review of the allegations in the proposition of error, I find the Appellant has not been denied a fair trial, a trial whose result was reliable and agree the claim of ineffective assistance of counsel must be denied.